UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DENNISE BOLDT, INDIVIDUALLY | § | |
| AND AS BENEFICIARY OF THE LIFE | § | |
| INSURANCE POLICY ISSUED TO | § | |
| MICHAEL W. BOLDT (DECEASED) and | § | |
| DENNISE BOLDT (AS EXECUTRIX | § | |
| OF THE ESTATE OF MICHAEL W. | § | |
| BOLDT (DECEASED) | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:06-cv-25 |
| | § | |
| THE DOW CHEMICAL COMPANY | § | |
| VOLUNTARY GROUP ACCIDENT | § | |
| INSURANCE PLAN and AIG LIFE | § | |
| INSURANCE COMPANY | § | |

MEMORANDUM OPINION & ORDER

Pending before the court are Defendants AIG Life Insurance Company and The Dow Chemical Company Voluntary Group Accident Insurance Plan's Motion for Summary Judgment (dkt. #17) and Plaintiff, Dennise Boldt's Cross-Motion for Summary Judgment (dkt #18). After considering the motions, responses, administrative record and applicable law, the court is of the opinion that Defendant's motion for summary judgment should be GRANTED and Plaintiff's cross-motion should be DENIED.

**Factual and Procedural Background**

Plaintiff, Dennise Boldt, brought this suit to recover accidental death benefits as a beneficiary of an Employee Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA") group accident policy ("Plan") offered to employees of The Dow Chemical Company. Boldt's husband was employed at Union Carbide Corporation, a subsidiary of Dow Chemical from April 1, 1974 until his death on January 10, 2005. Mr. Boldt drowned to death when his vehicle rolled into a pond on the couple's property. The medical evidence indicated that he lost consciousness prior to rolling

into the pond due to a heart complication.

Plaintiff filed a claim with AIG, the claims administrator of the Plan on January 27, 2005.[1] In reaching its initial benefit determination, AIG reviewed the proof of loss claim form submitted by Plaintiff, the death certificate, the incident and officer's report from the Victoria County Sheriff's Department, the medical examiner's autopsy report and the report of Dr. Joye Carter, an independent forensic pathologist consulted by AIG.  The insurance policy provides coverage under the following relevant policy provision:

> Accidental Death and Dismemberment Indemnity: When injury results in any of the following losses to an Insured Person within 365 days of the date of the accident, the Company will pay in one sum the indicated percentage of the Principal Sum.[2]
>
> "Injury" wherever used in this policy means bodily injury caused by an accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy.[3]

After completing its investigation, AIG denied Plaintiff's claim for benefits, reasoning that Mr. Boldt's death did not result "directly and independently of all other causes" as required for policy coverage.[4]  On May 2, 2005, AIG notified Plaintiff that her claim had been denied and advised her of her right to appeal the denial.[5]  The denial letter informed Plaintiff that she had 60 days to appeal and should submit any additional evidence refuting AIG's decision.[6]

---

[1]  AIG 00015.

[2]  AIG 00100.

[3]  AIG 00094.

[4]  AIG 00007.

[5]  *Id.*

[6]  AIG 00009.

Plaintiff appealed this decision, but provided no additional evidence to rebut AIG's findings. The ERISA Appeals Committee of AIG ("Appeals Committee") reviewed the claim anew and consulted Dr. Stephen Hubbard, a cardiologist, for an additional independent review of the claim. Dr. Hubbard determined that it was more likely than not that Mr. Boldt died from a heart condition, most likely an arrhythmia.  On November 4, 2005, the Appeals Committee upheld the denial of the claim.[7]  Dissatisfied with the decision, Plaintiff submitted additional evidence to AIG on February 27, 2006, including Mr. Boldt's medical records and a disciplinary complaint filed against Dr. Carter.  On March 3, 2006, Plaintiff filed her Original Complaint seeking recovery of accidental death benefits under 29 U.S.C. § 1132(a)(1)(B).[8]  Plaintiff amended her complaint on May 19, 2007, adding a claim against AIG for statutory penalties under 29 U.S.C. § 1132(c).

Defendants maintain they are entitled to judgment as a matter of law because the Plan only pays benefits if the insured's death is accidental and "result[s] directly and independently of all other causes."  Because there is substantial evidence that Mr. Boldt suffered from a heart complication causing him to lose consciousness before drowning in the pond, AIG did not abuse its discretion when it denied Plaintiff's claim for benefits.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[7]  AIG 00001.

[8]  "A civil action may be brought--(1) by a participant or beneficiary--(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting

4

"conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## I.     ERISA Claim–Standard of Review

Plaintiff presents three arguments urging this court to apply *de novo* review to AIG's decision to deny Plaintiff benefits, or at the very least to provide less deference under the abuse of discretion standard.  Plaintiff argues that the court should apply *de novo* review because the Appeals Committee was not granted discretionary authority under the Plan.  Alternatively, Plaintiff contends the standard of review should be heightened because of the "procedural irregularities" in processing Plaintiff's claim or because AIG operated under a conflict of interest when it denied her claim.

ERISA provides federal courts with jurisdiction to review benefit determinations.  *See* 29 U.S.C. § 1132(a)(1)(B); *Estate of Bratton v. Nat'l Union Fire Ins.*, 215 F.3d 516, 520–21 (5th Cir. 2000).  Generally, if the language of the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," an administrator's decision to deny benefits is reviewed for abuse of discretion.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113–15 (1989); *Meditrust Fin. Srvcs. v. Sterling Chem.*, 168 F.3d 211, 213 (5th Cir. 1999). Regardless of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the administrator during the course of a benefits review will be rejected only upon a showing of an abuse of discretion.  *Id.*; *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991) (noting "federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment").  In applying the abuse of discretion standard, the court must determine whether the plan administrator acted arbitrarily or capriciously.

5

*Meditrust*, 168 F.3d at 214. A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, the court will uphold an administrator's decision if it is supported by substantial evidence.  *Id.* at 215; *see also Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) ("Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (citation omitted).

### A.      Appeals Committee

Plaintiff urges this court to adopt *de novo* review because the Plan documents do not expressly grant discretionary authority to AIG's Appeals Committee, which rendered the final decision upholding the denial of benefits.  Courts, however, routinely apply the abuse of discretion standard when a plan grants an administrator discretionary authority and the administrator utilizes an internal appeals committee to review a claim on appeal.  *See e.g., Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329 (5th Cir. 2001); *Thomas v. AIG Life Ins. Co.*, 244 F.3d 368 (5th Cir. 2001).  The Fifth Circuit has specifically rejected this argument before and held even if the plan did not provide specifically that an appeals committee was vested with discretion to act on claims, the decision of an appeals committee should be reviewed under the abuse of discretion standard if the plan provided for the appointment of an appeals committee by the claims administrator.  *Chevron Chem. Co. v. Oil, Chem., & Atomic Workers Local Union 4-447*, 47 F.3d 139, 144 (5th Cir. 1995) (citing *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1284 (9th Cir. 1990)).  Further, the court found that irrespective of the plan language granting explicit discretion to an appeals committee, ERISA permits a named fiduciary (e.g., the claims

6

administrator) to delegate its fiduciary responsibilities.  Section 1105 provides: "The instrument under which a plan is maintained may expressly provide for procedures . . . (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities . . . under the plan."  29 U.S.C. § 1105(c)(1)(B).  Thus, ERISA permits a named fiduciary to delegate its discretionary authority and entitles that delegate to the same standard of review.

Several references in the Plan documents and the SPD indicate that AIG as a whole entity is given discretionary authority to determine benefit eligibility and also that AIG may delegate its discretionary authority to its internal Appeals Committee.  Specifically, the Plan document states "the review and *final* decision on a Claim for Benefits under the Plan shall be made by the Claims Administrator (emphasis added)."[9]  The "Claims Administrator" is defined as AIG Life Insurance Company.[10]  The Summary Plan Description ("SPD") also provides under the "Claims Procedure" section that "AIG will approve or deny a Claim for Plan Benefits.  AIG is the named fiduciary for both the initial determination and (if there is an appeal), the appellate determination."[11]  Further, within the section titled "Appealing Denial of Plan Benefits" the SPD states: "The person who reviews the appeal is not the same person who denied the initial Claim. . . AIG will notify you in writing of its *final* decision (emphasis added)."[12]  The Plan documents contemplate that AIG and its Appeal Committee will have the same authority with respect to making benefit eligibility determinations.  Finding that the Appeals Committee holds the same discretionary authority to

---

[9]  AIG 000059.

[10]  AIG 00045.

[11]  AIG 00085.

[12]  AIG 00091.

determine benefits eligibility as AIG, the court will apply the abuse of discretion standard when reviewing the Appeals Committee's final decision.

### B.    Procedural Irregularities

Next, Plaintiff urges the court to heighten the standard of review because of the material procedural defects in processing Plaintiff's claim. Specifically, Plaintiff contends that under the terms of the SPD, AIG exceeded the 90 day period during which it could make its initial determination. Plaintiff submitted her claim on January 27, 2005, so AIG had until April 27, 2005 to reach its decision. AIG did not deny the claim until May 2, 2005. Further, after the notice of appeal was received on May 31, 2005, AIG had 60 days to reach a final decision, i.e. July 30, 2005. AIG did not make its final eligibility determination until November 4, 2005. Despite the untimely denials, however, the Fifth Circuit has declined to adjust the standard of review based on procedural defects, and Plaintiff concedes as much.[13] In *Southern Farm Bureau v. Moore*, 993 F.2d 98, 99 (5th Cir. 1993), the Fifth Circuit determined that an administrator's failure to comply with procedural requirements did not affect the applicable standard of review. This court is unwilling to depart from current Fifth Circuit precedent. Thus, the failure of AIG to comply strictly with ERISA or the Plan's procedural requirements will not trigger *de novo* review, especially in light of the fact that AIG substantially complied with its claim procedures and kept Plaintiff advised of its actions throughout the claims process. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392–93 (5th Cir. 2006) ("Challenges to ERISA procedures are evaluated under the substantial compliance standard.").

### C.    Conflict of Interest

Plaintiff argues AIG's decision should be given less deference because its role as

---

[13]  P.'s Cross Mot. for Summ. Judg., p. 27.

administrator and insurer represents a conflict of interest.  Plaintiff advocates that under the sliding

scale approach established by the Fifth Circuit, the court should review AIG's decision *de novo*.

The Fifth Circuit instructs that when an employer contracts with a third party that both insures and

administers the plan, the administrator is considered to be self-interested, i.e. the administrator

potentially benefits from every denied claim.  *Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 295

(5th Cir. 1999).  The United States Supreme Court addressed the extent of deference to be given to

a self-interested administrator and held "if a benefit plan gives discretion to an administrator or

fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r]

in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115 (1989) (citations omitted).  Thus, the standard of review remains abuse of discretion;

however, when dealing with a self-interested administrator, less deference will be given to the

administrator's decision in proportion to the administrator's apparent conflict on a "sliding scale."

*Vega*, 188 F.3d at 296.  Any reduction in the degree of deference given to an administrator's

decision will depend on the evidence presented by an ERISA plaintiff that some conflict exists. *Ellis

v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 270 n.18 (5th Cir. 2004).  Plaintiff has presented

no evidence that AIG made its decision based on any conflict of interest beyond that inherent in its

position as insurer and claims administrator.

Having rejected Plaintiff's attempts to heighten the standard of review, the court will review

AIG's decision for abuse of discretion.  The Plan specifically grants AIG, as  the "Claims

Administrator,"[14] the responsibility of reviewing claims, computing the amount of benefits which

---

[14]  AIG 00045.

9

will be payable under the Plan, and authorizing the payment of benefits.[15]  Further, the SPD provides

that the "Claims Administrator has the full and complete discretion to interpret and construe the

provisions of the Plan, and such interpretation shall be final, conclusive and binding."[16]  As the

claims administrator, AIG was given final discretionary authority to determine benefits eligibility,

and thus, its decision will be upheld unless it acted arbitrarily or capriciously resulting in an abuse

of discretion.  However, where the Plaintiff offers no evidence other than an administrator/insurer's

dual role, "it is appropriate to review the administrator's decision with only a modicum less

deference than [the court] otherwise would." *Vega*, 188 F.3d at 301.

## II.    Policy Interpretation

Plaintiff argues that the definition of "injury" in the policy and SPD was ambiguous and did

not put her on notice that the limiting language in the definition would apply in an accidental death

situation.[17]  The policy and the SPD define coverage using similar, although not identical language.[18]

Specifically, the policy states:

---

[15]  AIG 00059.

[16]  AIG 00069.

[17]  The court notes that Plaintiff never argued that AIG incorrectly interpreted the definition or that it was ambiguous during the administrative process.  Throughout the review process, Plaintiff was aware that AIG was relying on the definition of "injury" contained in the policy and SPD. Plaintiff first presented this argument in her response to Defendants' Motion for Summary Judgment.

[18]  The court acknowledges Plaintiff's argument that the SPD is binding against the insurer when there are inconsistencies between the policy and the SPD.  *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991) (holding that the summary plan description is binding if there is a conflict between the summary plan description and the terms of the policy).  However, the court finds that the differences between the two are only slight and do not represent inconsistent statements of coverage.  Therefore, it is not necessary for the court to discuss which document controls in this case.

<u>Accidental Death and Dismemberment Indemnity</u>

When injury results in any of the following losses to an Insured Person within 365 days of the date of the accident, the Company will pay in one sum the indicated percentage of the Principal Sum for

LOSS OF:
Life                                                                                              100%[19]

<u>Definitions</u>

"Injury" wherever used in this policy means bodily injury caused by an accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy.[20]

The SPD describes coverage as follows:

<u>Coverage Provision</u>

If you, your insured Spouse of Dependent Child incur any of the following losses within 365 days of a covered accident, the Plan will pay a percentage of the Principal Sum as listed in the table below.

<u>Table of Losses</u>

Loss of:
Life                                                                                              100%[21]

<u>Definition of Terms</u>

Injury means bodily injury caused by an accident occurring while the Insured Person is covered by the Plan resulting directly and independently of all other causes in loss covered by this Plan.[22]

The terms 'death' and 'accident' are not defined in any of the Plan documents.

---

[19]  AIG 00100.

[20]  AIG 00094.

[21]  AIG 00073–74.

[22]  AIG 00082.

The Fifth Circuit has established a two-part analysis to determine whether an administrator has abused its discretion in interpreting the Plan terms. *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). A court first determines the legally correct interpretation of the plan, and whether the administrator's interpretation accords with the proper legal interpretation. *Rhorer v. Raytheon Eng'rs and Constructors*, 181 F.3d 634, 639 (5th Cir. 1999). If the administrator's interpretation is legally sound, then no further inquiry is required. *Id.* at 639–40. If the court concludes the administrator's interpretation was not correct, then the court must determine whether the administrator abused its discretion. *Id.* at 640.

ERISA preempts state common-law rules of construction for interpreting insurance policy terms. 29 U.S.C. § 1144(a). Matters of contract interpretation in the context of ERISA insurance policies are instead governed by a uniform federal common law. Because ERISA provides little guidance on matters of contract interpretation, the courts must fashion federal common law rules to govern ERISA suits in an effort to promote uniformity. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997); *Jones v. Ga. Pac. Corp.*, 90 F.3d 114, 116 (5th Cir.1996). The Fifth Circuit has enunciated several general principles in construing ERISA plan provisions. First, courts must interpret the contract language "in an ordinary and popular sense as would a person of average intelligence and experience," such that the language is given its generally accepted meaning, if there is one. *Wegner*, 129 F.3d at 818; *Jones*, 90 F.3d at 116. Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation is the court compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured. *Id.* Further, when construing the policy's language, the court must give effect to all contractual provisions so that none will be rendered meaningless. *Tex. Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 846 (5th Cir.

2007).

For further guidance, a court may however "draw guidance from analogous state law" in ascertaining the applicable federal common law, only to the extent it is not inconsistent with congressional policy concerns underlying ERISA. *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994). Texas contract interpretation law indicates that "[i]f policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and [will be] construe[d] [ ] as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). The fact that the parties offer different contract interpretations does not itself create an ambiguity. *Id.* Ambiguity only exists if the contract language is susceptible to two or more reasonable interpretations. *Id.*

The "resulting directly and independently of all other causes in loss" language at issue in this case is common to accident insurance policies. Several circuit courts have upheld similar, if not identical, definitions of the term "injury" in accident insurance policies. Recently, the Tenth Circuit directly addressed whether the definition of "injury" in an accident insurance policy was ambiguous. *Pirkheim v. First UNUM Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). The *Pirkheim* court held the words "directly and independently of all other causes" when given their plain and ordinary meaning were not ambiguous. *Id.* The court concluded, under an ordinary reading of the definition, the policy provision imposes two conditions: (1) the loss must result *directly* from accidental bodily injury; and (2) the loss must result *independently* of all other causes. *Id.* at 1011; *see also Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179 (11th Cir. 2004) (affirming district court's interpretation of the "unambiguous language of the policy" (i.e. "loss from bodily injury which, directly and from no other causes, result in a covered loss") which precluded recovery); *Mers v. Marriott Int'l. Group*

*Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998) (finding the Plan reasonably applied the definition of "injury"–"bodily injury caused by an accident . . . and resulting directly and independently of all other causes"– and there was no abuse of discretion when the medical evidence demonstrated that decedent did not die as a direct result of accident and independent of all other causes); *Winchester v. Prudential Life Ins. Co. of Am.*, 975 F.2d 1479, 1487 (10th Cir. 1992) (applying Utah law, the court found that the "directly and independently of all other causes" provision relied on by the administrator to deny coverage "makes clear that this [policy] excludes losses resulting even in part from preexisting conditions").

While the Fifth Circuit has not directly addressed an ambiguity challenge to the definition of "injury," it has upheld the application of such provisions by analyzing when certain accidents are excluded from coverage by this definition.  For instance, the *Sekel* court acknowledged that the "directly and independently" language, "similar to those in many other accidental death or disability policies," has been construed in Texas and many other jurisdictions to "preclude recovery where disease or bodily infirmity is a concurrent proximate cause of death."  *Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1337 (5th Cir. 1983).  The Fifth Circuit found that decedent's heart condition which precipitated his fall was a "concurrent proximate cause of death," thereby barring coverage under the accidental death policy. *Id.*; *see also Thomas v. AIG Life Ins. Co.*, 244 F.3d 368 (5th Cir. 2001); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448 (5th Cir. 1995).  The Fifth Circuit's rationale in interpreting this provision indicates that this particular definition of "injury" is not ambiguous. Analogous state law in Texas also construes similar contract provisions with the same result.  *See Minn. Life Ins. Co. v. Vasquez*, 192 S.W.2d 774, 777–78 (Tex. 2006) (upholding clause); *Stroburg v. Ins. Co. Of N. Am.*, 464 S.W.2d 827, 829 (Tex. 1971) ("Independent" as used in the coverage clause means 'solely,'

14

'only,' and 'standing alone.'"); *JCPenney Life Ins. Co. v. Baker*, 33 S.W.3d 417, 421 (Tex. App.–Fort Worth 2000, no pet.) (concluding a coverage clause of this type limits recovery to accidental bodily injuries that are the sole cause of death).

Plaintiff interprets the language "resulting directly and independently of all other causes in loss covered by this Plan" to preclude coverage only when "other causes in loss covered by the plan were a contributing factor in Mr. Boldt's death." In other words, another loss covered by the plan must cause the covered accident. This interpretation is strained at best. An ordinary and plain reading of the coverage clause provides that the loss must be an accident and result directly in a covered loss that is independent of all other causes, consistent with the interpretations cited above. "Loss" is the operative word throughout the coverage provisions and definitions in the policy and the SPD, and death is included as a "loss covered by this Plan." While Plaintiff attempts to create ambiguity by advancing an alternative interpretation, this interpretation cannot be described as reasonable. Plaintiff's interpretation effectively converts this accident policy into a life insurance policy. In other words, coverage would be limited if a person were accidentally injured, but if death occurs, there is no limitation on coverage. The reasonable interpretation clearly limits coverage to bodily injuries resulting directly from an accident and independent of any other cause. As such, the definition of "injury" is not ambiguous, and a court should "'not artificially create ambiguity where none exists.'" *Hammond v. Fidelity and Guarantee Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990)); *Fallo v. Piccadilly Cafeterias, Inc.*, 1995 WL 120206, *2 (E.D. La. 1995). Therefore, the Plan's terms limit coverage to accidental losses that are the sole cause of death, and Plaintiff cannot recover if an independent cause, such as a heart complication, was a concurrent proximate cause of Mr. Boldt's death.

15

Plaintiff also alleges that the SPD violated ERISA because it did not provide her with an accurate, comprehensive, easy to understand summary of the plan.  ERISA requires:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries.... The summary plan description shall ... be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a)(1).  The federal regulations that govern summary plan descriptions provide that a summary plan description "must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102-2(b). Also, the summary plan description must contain "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial ... of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide." 29 C.F.R. § 2520.102-3(l). Finally, the administrative regulations expressly require that "exceptions, limitations, reductions, or restrictions of plan benefits" be clearly noted. 29 C.F.R. § 2520.102-2(b).  The summary plan description must be read as a whole.  *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 981 (5th Cir. 1991).  By its nature, a summary description of the policy does not and should not reproduce every term of the policy.  *Id.* "[T]he very purpose of having a summary description of the policy is to enable the average participant in the plan to understand readily the general features of the policy."  *Id.*

In this case, injury was defined in both the policy and the SPD.  As discussed above, the language was not ambiguous and sufficiently apprised Plaintiff that the limiting language in the definition of injury would apply in an accidental death situation. *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 399, 407 (8th Cir. 1995) (finding that "the average plan participant" language of the ERISA statute "appears to be an objective standard rather than requiring an inquiry into the subjective

perception of the individual participants"). The SPD describes coverage for certain accidental losses, including death. The definition of injury notifies Plaintiff that no "loss covered by this Plan" will be covered unless the injury results by accident directly and independently of all other causes. The Plaintiff argues the SPD did not use the word injury when describing coverage. While the policy may have more clearly incorporated injury into the coverage provision, the definition of "injury" in the SPD applies to all losses covered by the policy and sufficiently apprised Plaintiff of the limitations to coverage. *See Hogan v. Nationsbank Ins. Co., Inc.,* 57 Fed. Appx. 210, 2003 WL 147514, *2 (5th Cir. 2003) ("[T]he language of the SPD is not in our view sufficiently uncertain to compel us to hold that it is ambiguous . . ., despite the language in the primary plan document which unambiguously provides that death resulting from medical treatment of disease or infirmity is not covered.). The fact that Plaintiff only brings up this argument for the first time in her response to Defendants' motion and not in her own cross-motion for summary judgment also demonstrates that this is Plaintiff's last ditch attempt to inject a plan interpretation issue into the fray where none exists. The court does not find any ambiguity or confusion in the policy language or the SPD. Thus, AIG gave the policy a legally correct interpretation.

### III.   Did AIG Abuse its Discretion?

In making its initial decision, AIG relied on the proof of loss claim form submitted by Plaintiff, the death certificate, the offense report and officer's report from the Victoria County Sheriff's Department, the medical examiner's autopsy report and Dr. Joyce Carter's report, an independent forensic pathologist who reviewed the medical evidence in the case. Based on this evidence, AIG determined that Mr. Boldt's death did not result directly and independently of all other causes, as required for coverage. AIG concluded that a heart complication caused Mr. Boldt

to lose consciousness prior to rolling into the pond and drowning and therefore his death did not result directly and independently of all other causes.  Substantial, concrete evidence in the record supported this conclusion.

AIG found Mr. Boldt had a history of high blood pressure and heart problems.[23]   The officer's description of the scene supported the conclusion that Mr. Boldt had lost consciousness prior to driving into the pond.  The report documented that the keys of Mr. Boldt's truck were still in the ignition in the on position and the automatic transmission was still in drive.[24]   The speedometer was stuck at 50 mph and the tire tracks led directly from the driveway into the pond about 100 yards away, indicating Mr. Boldt had not attempted to swerve or evade the pond.[25]  Decedent's son also informed the officer that the deceased was on medication for high blood pressure and heart problems.[26]

The autopsy performed by Dr. Roberto Bayardo revealed signs of cardiac distress.  Mr. Boldt was found with a markedly large heart, twice the normal size, moderate atherosclerotic changes in his coronary arteries, and thickening of the left ventricular wall.  The lungs were filled with an "abundant amount of frothy bloody fluid."[27]  There was no external evidence of a traumatic injury.[28]  Dr. Bayardo concluded that Mr. Boldt "came to his death as a result of fresh water drowning.  It is

---

[23]   AIG00007.

[24]   AIG 00345.

[25]   AIG 00344.

[26]   AIG 00345.

[27]   AIG 00348.

[28]   AIG 00347.

possible that the decedent lost consciousness previously to drowning as a result of cardiac arrhythmia, due to his enlarged heart (dilated cardiomyopathy)."[29]

The death certificate also found the immediate cause of death to be fresh water drowning; however, listed under the title "significant condition[] contributing to death" was the following citation: "Decedent lost consciousness previous to drowning as a result of cardiac arrhythmia due to an enlarged heart."[30]  The death was classified as an "accident," but the description of how the injury occurred was documented as "Decedent had a history of heart problems.  He had apparently over exerted himself doing physical labor.  He attempted to drive home, but became unconscious and drove into a lake."[31]

Finally, Dr. Joye Carter, a forensic pathologist, was consulted to review Mr. Boldt's file. Dr. Carter reviewed the death certificate, incident report, claim form and the medical examiner's autopsy report.[32]  She determined that Mr. Boldt suffered a catastrophic cardiac event prior to entering the water.  The death, in her opinion, could be attributed to the cardiac event or to the drowning.  She came to this conclusion based on the evidence showing no sign by Mr. Boldt of attempting to avoid the lake and the description of how the death occurred given by Plaintiff and the death certificate.  She advised that there are "no pathological findings that separate cardiac death from asphyxia due to drowning but the circumstances suggest that the cardiac event was sufficient

---

[29] AIG 00349.

[30] AIG 00038.

[31] *Id.*

[32] AIG 00368.

to cause physical impairment leading to the ultimate death of Mr. Boldt."[33]  Dr. Carter also

concluded that the autopsy findings were consistent with sudden cardiac death and opined that "the

[medical examiner] gave the family the benefit of doubt in ruling the death as an accident but left

open the possibility of a natural cause."[34]

When a claim denial is based on medical judgment, the Plan requires AIG to consult a

qualified health care professional who is neither the same person consulted for the initial

determination nor a subordinate who reports to the initial consultant.[35]  During the appeals review,

another outside medical expert was retained to review Mr. Boldt's case.  Dr. Stephen Hubbard, a

certified cardiologist, performed a forensic consultation.  He also reviewed the death certificate, the

officer's and incident report from the accident scene and the medical examiner's autopsy report.[36]

Dr. Hubbard generally agreed with the medical examiner's findings, but opined that the "frothy

fluid" in the lungs of Mr. Boldt suggested that he may have been in pulmonary edema prior to his

death–which is indicative of congestive heart failure or fatal arrhythmias.  Further, the scene of the

accident indicates Mr. Boldt was unconscious prior to entering the water and remained so because

no attempt was made to steer his truck away from the pond or escape once his truck entered the

water.  Dr. Hubbard concluded it was "far more likely than not, Mr. Boldt died from a complication

of his underlying heart condition, probably an arrhythmia, with loss of consciousness which led to

---

[33]  AIG 00369.

[34]  *Id.*

[35]  AIG 00091.

[36]  AIG 00331.

his driving into the pond. . ."[37]  Based on the following, the Appeals Committee found that the record

contains "substantial evidence that Michael Boldt did not die due to an accident, but died as a result

of a complication of his underlying heart condition"; and therefore, Plaintiff's claim for benefits

must be denied.[38]

The law requires only that substantial evidence support the administrator's decision.  *See*

*Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005) ("The law requires

only that substantial evidence support a plan fiduciary's decisions, including those to deny or

terminate benefits, *not* that substantial evidence exists to support the employee's claim of

disability.") (emphasis in original).  Taking into consideration the evidence available to AIG when

it made its decision to deny benefits, it was not an abuse of discretion for it to determine that Mr.

Boldt's death did not result "directly and independently of all other causes."  Based on the

administrative record,  it was reasonable for AIG to determine that a cardiac complication caused

Mr. Boldt to lose consciousness, which in turn caused his vehicle to plunge into the pond causing

his death, and therefore his death was not independently caused by an accident.  Thus, his injury was

not covered under the policy.[39]  There is substantial evidence that Mr. Boldt's accidental drowning

death did not occur independently of the cardiac event.

## IV.    Consideration of Plaintiff's Late Submitted Evidence

Finally, Plaintiff argues this court should consider the evidence Plaintiff submitted on

---

[37]  AIG 00332.

[38]  AIG 00003.

[39]  Plaintiff additionally argues that AIG abused its discretion because the reasons for
denial were different in the initial denial letter and the appeals decision, and because AIG had no
evidence that Mr. Boldt suffered from heart problems.  Neither of these arguments persuade the
court that AIG abused its discretion and are not supported by the record.

February 27, 2006 in reviewing AIG's decision.  In reviewing factual determinations made by an administrator, the court may only consider the evidence that was available to the administrator in making its decision. *Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 299 (5th Cir. 1999); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597–98 (5th Cir. 1994).  "[T]he district court is precluded from receiving evidence to resolve disputed material facts–*i.e.*, a fact the administrator relied on to resolve the merits of the claim itself."[40]  *Vega*, 188 F.3d at 299.  Before filing suit, a claimant can add to the record by submitting additional evidence to the administrator "in a manner that gives the administrator a fair opportunity to consider it."  *Id.* at 300.  The rule allowing a claimant to add additional evidence to the administrative record is liberal and provides the claimant ample opportunity to do so.  However, the Fifth Circuit does prohibit a district court from considering additional evidence that was not presented to the administrator in a timely manner in order to encourage parties to make a good faith effort to resolve the claim with the administrator before filing suit.  *Id.*

The court will not consider the additional evidence submitted by Plaintiff in this case because the untimely submission did not provide AIG with a fair opportunity to review it.  Plaintiff presented evidence to AIG for the first time almost four months after the final decision was made and four days before filing suit.  Plaintiff was well aware of her obligation to present any evidence necessary to assist AIG or rebut its denial of benefits.  In the initial denial letter, Plaintiff was advised it was her responsibility to "submit any additional information or documentation that would provide

---

[40] The Fifth Circuit will allow the introduction of evidence outside the record in limited circumstances, if the evidence relates to how an administrator has interpreted the terms of the plan in other instances or to assist the district court in understanding medical terminology.  *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 102 (5th Cir. 1993).  However, none of those exceptions apply here.

evidence that her spouse's death resulted from bodily injury caused by an accident and resulting directly and independently of all other causes."[41]  The evidence was more readily available to the Plaintiff and she has provided no explanation as to why this could not have been presented to AIG during the administrative process.  Allowing the additional evidence submitted by the Plaintiff four days before filing suit to become part of the administrative record would circumvent the prevailing policy of encouraging parties to resolve their conflict through the administrative claims procedure.

## V.    Remand

In her amended complaint, Plaintiff moves this court to remand this cause back to AIG for further administrative review because AIG did not timely furnish a copy of Dr. Hubbard's report.[42] Plaintiff claims that she was denied a full and fair review, as required by ERISA, because she was not furnished with this report prior to AIG's final determination of her claim.  Section 1133 of ERISA states:

> In accordance with regulations of the Secretary, every employee benefit plan shall–
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  The claims procedure regulations promulgated by the Department of Labor to ensure administrators are complying with section 1133 provide in relevant part: "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents,

---

[41]  AIG 00009.

[42]  Defendants seek summary judgment on this ground.  Plaintiff has not sought summary judgment on this ground in her cross-motion for summary judgment or responded to this issue in her response.

records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).  "Relevant" documents include those "relied upon in making the benefit determination."  29 C.F.R. § 2560.503-1(m)(8)(i).

To support her request for remand, Plaintiff relies on the Eighth Circuit's opinion in *Abram v. Cargill, Inc.*, 395 F.3d 882 (8th Cir. 2005).  In *Abram*, on initial review, the claimant submitted her medical records and treating physician's notes supporting her claim for disability benefits.  *Id.* at 884.  Aetna, the plan administrator, sent claimant to its own specialist, Dr. Gedan, who found she was not "totally disabled" under the policy terms, so Aetna denied her claim.  *Id.* at 885.  Abram appealed and submitted a functional capacity evaluation, along with further progress notes from her treating physician to dispute Aetna's decision.  *Id.* Aetna forwarded this new information to Dr. Gedan for a second review. *Id.* at 886.  Based on Dr. Gedan's evaluation of this additional evidence, Aetna finally denied Abram's claim.  Aetna provided a copy of Gedan's second report with the final denial letter.  *Id.*  The Eighth Circuit held that Aetna's failure to provide Dr. Gedan's final report before the final decision was made denied the claimant a full and fair review under ERISA § 1133 because she could not "meaningfully participate in the appeals process" without the opportunity to review and respond to the physician's second report.  *Id.*

The Eighth Circuit found one of the core requirements of "full and fair review" is providing the claimant an opportunity to engage in "meaningful dialogue" with the administrator. *Id.*  While this court agrees that the claimant is entitled to know what evidence was relied upon by the administrator and respond to that evidence, there is a distinction between *Abram* and the present case.  Unlike *Abram*, the claimant in this case did not attempt at all during the administrative proceeding to engage in any dialogue with the administrator.  In addition to not presenting any

evidence to refute AIG's initial denial, the Plaintiff did not even request Dr. Hubbard's report until three months after the final decision had been rendered.  It appears to the court that the Plaintiff was not interested in meaningfully participating in the administrative process, but only now seeks to use this technical violation as a means to reopen her case.

Further, the Tenth Circuit also recently addressed this issue and came to the opposite conclusion.  In *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161 (10th Cir. 2007), the court addressed whether the administrator violated ERISA regulations by "failing to make [the] reviewers' reports available prior to a final decision on appeal."  *Id.* at 1162.  Similar to the present case, the administrator sent claimant's complete file for review to two medical professionals who had not been involved in the original denial of benefits.  *Id.* at 1163.  The reports analyzed the new medical evidence submitted on appeal, but "they contained no new factual information and recommended denial on the same grounds as the initial claim determination."  *Id.*  The court found that reports generated during the appeals process did not have to be disclosed to a claimant until after the conclusion of the administrative appeal.  *Id.* at 1166.  In support of its decision, the court noted that in subsection (h)(3)(iii) of the applicable regulations, an administrator is required to consult with a health care professional in "deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment." 29 C.F.R. § 2560.503-1.  Because this regulation mandates consultation with a health care professional on appeal, the court concluded that "[p]ermitting a claimant to receive and rebut medical opinion reports generated in the course of administrative appeal–even when those reports contain no new factual information and deny benefits on the same basis as the initial decision–would set up an unnecessary cycle of submission, review, re-submission, and re-review."  *Id.*  Further, the court relied on the Department of Labor's

description of the disclosure regulation.  The Department stated it believed the disclosure of the relevant documents would "serve the interests of both claimants and plans by providing clarity as to the plans' disclosure obligations, *while providing claimants with adequate access to the information necessary to determine whether to pursue further appeal*."  *Id.* at 1167 (citing ERISA Claims Procedure, 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000) (emphasis added)).  The court reasoned that requiring reports generated on appeal to be disclosed prior to the final decision would belie the Department's description because access to these documents "would not aid claimants in determining 'whether to pursue further appeal,' because claimants would not yet know if they faced an adverse decision."  *Id.*  The court held "[s]o long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information" disclosing an appeal-level report after the final decision is consistent with full and fair review.  *Id.*

As there seems to be a split in circuit reasoning, this court is not inclined to adopt the hard and fast rule established in *Abram* without further guidance from the Fifth Circuit.  Further, while the Fifth Circuit has not addressed this issue directly, it has more generally held that despite technical noncompliance with ERISA procedural requirements, if the purpose of ERISA section 1133 is fulfilled then only substantial compliance with the regulations is required.  *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256 (5th Cir. 2005); *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006) ("Challenges to ERISA procedures are evaluated under the substantial compliance standard.").  Under § 1133(2), "full and fair review" has been interpreted to mean that the claimant should know what evidence the decision-maker relied upon, have an opportunity to address the accuracy and reliability of the evidence, and have the decision-maker consider the evidence presented by both parties prior to reaching and rendering its decision.  *Sweatman v. Commercial*

*Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994).

The court finds that the claims procedure utilized by AIG provided Plaintiff with a full and fair review of her claim. Specifically, on May 2, 2005, AIG sent Plaintiff a detailed letter addressing the specific reasons for its denial. AIG cited the policy provisions it relied upon in denying the claim and discussed each piece of evidence upon which it based its conclusion. AIG disclosed the report of the forensic pathologist it consulted on initial review and advised the Plaintiff of her right to appeal and submit any additional evidence to refute AIG's finding. Plaintiff appealed the decision, but submitted no evidence to challenge AIG's decision. Subsequently, on August 3, 2005, AIG notified Plaintiff that ERISA and the Plan required it to obtain a second medical opinion. AIG stated that it was sending the same evidence considered during the initial review to Dr. Hubbard for his review. On October 3, 2005, AIG sent an update advising Plaintiff that the Appeals Committee would meet on October 19, 2005 to review her claim. Finally, on November 4, 2005, AIG sent Plaintiff a detailed letter explaining its decision to uphold the denial of her benefits claim. AIG relied on the same policy provisions and came to the same conclusion based on the same evidence to deny Plaintiff's claim. The letter also included a large excerpt of Dr. Hubbard's report confirming its conclusion that Mr. Boldt lost consciousness due to a heart complication prior to drowning. Thus, throughout the process, Plaintiff was advised of the specific reasons why the claim was being denied, she was advised of the specific evidence used by AIG, she was provided an opportunity to present rebuttal evidence, her entire claim file was reviewed anew by a separate appeals committee, and the final determination was based on the same factual information as the original denial. Thus, the court finds that AIG provided Plaintiff with a full and fair review of her claim and she is not entitled to remand.

## VI.    Statutory Penalties

Lastly, Plaintiff seeks statutory penalties pursuant to 29 U.S.C. § 1132(c)(1) for AIG's failure

to provide Dr. Hubbard's report after Plaintiff made a written request.[43]  Section 1132(c)(1) provides

that any administrator who fails or refuses to comply with a request for information may, within the

court's discretion, be held personally liable to the requesting party for up to $100 for each day after

the date of refusal.  29 U.S.C. § 1132(c)(1).  Plaintiff contends she is entitled to these statutory

penalties based on 29 U.S.C. § 1024(b)(4) ("The administrator shall, upon written request of any

participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the

latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or

other instruments under which the plan is established or operated.").  Plaintiff's argument fails for

two reasons.  First, Dr. Hubbard's report is not the type of information required to be disclosed

under section 1024(b)(4).  Plaintiff represents that an administrator must "furnish a copy of all

instruments under which a plan is governed or a claim determination is made."[44]  However, section

1024 requires the disclosure of plan documents and summaries upon request; nowhere does section

1024 require administrators to furnish documents related to a claim determination.  Providing Dr.

Hubbard's report is required under the regulations, however, Plaintiff is not entitled to statutory

penalties under 29 U.S.C. § 1132(c) for AIG's failure to do so.  *See Wilczynski v. Lumbermens Mut.*

*Cas. Co.*, 93 F.3d 397 (7th Cir. 1996) (determining that § 1132(c) cannot be construed as authorizing

a civil penalty for a plan administrator who fails to provide a copy of the claim file within 30 days

---

[43]    Defendants seek summary judgment on this ground.  Plaintiff has not sought
summary judgment on this issue in her cross-motion for summary judgment or responded to this
issue in her response.

[44]    Pl.'s First Am. Complaint, pg. 7.

of a request).

Further, ERISA precludes Plaintiff from recovering statutory penalties against AIG because AIG is not the designated plan administrator. *See Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1077 (5th Cir. 1990) (rejecting the argument that the plan insurer should be considered a de facto plan administrator and holding that although a penalty request is left to the court's discretion, § 1132(c) must be strictly construed given its status as a civil penalty provision). Under ERISA, an "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The Fifth Circuit has cautioned that "[a]s a penalty provision section 1132(c) must be strictly construed." *Fisher*, 895 F.2d at 1077. Because The Dow Chemical Company is the Plan Administrator within the terms of the Plan document,[45] an action against AIG for statutory penalties is untenable. *See McKinsey v. Sentry Ins.*, 986 F.2d 401, 405 (10th Cir.1993) ("[I]f a plan specifically designates a plan administrator, then that individual or entity is the plan administrator for the purposes of ERISA."). Because § 1132(c) does not authorize assessing a civil penalty against a claims administrator, Plaintiff's claim fails as a matter of law.

## Conclusion

Although Plaintiff advances a variety of arguments in support of her claim, none creates a material fact issue establishing that AIG abused its discretion. Based on the administrative record reviewed by AIG, the court finds that substantial evidence supported AIG's decision to deny Plaintiff's claim for benefits. AIG's conclusion that Mr. Boldt's death did not result directly and independently of all other causes was reasonable in light of the medical evidence available to AIG.

---

[45] AIG 00068.

Therefore, AIG did not abuse its discretion when it found that the accident insurance plan did not provide coverage.  Finding no genuine issue of material fact, the court GRANTS Defendants' Motion for Summary Judgment (dkt. #17) and DENIES Plaintiff's Cross-Motion for Summary Judgment (dkt. #18).

It is so ORDERED.

Signed this 15th day of August, 2007.


JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE